## HARRISON v. OMAR REFINING CO. et al.

No. 29975. Nov. 12, 1941.

Rehearing Denied Jan. 6, 1942.

Application for Leave to File Second Petition for Rehearing Denied Feb. 17, 1942.

*121 P. 2d 993.*

Anton Koch, of Henryetta, and Henry R. Duncan, of Tulsa, for plaintiff in error.

Simons, McKnight, Simons, Mitchell & McKnight, of Enid, and Wilbur J. Holleman, of Tulsa, for defendants in error.

CORN, V. C. J. This is an action for damages, wherein judgment was rendered for the defendants and plaintiff appealed. The parties are referred to herein as they appeard in the trial court.

The decisive issue involved relates to a release of liability relied upon by the defendant as a bar to the action. However, this was not the only defense pleaded, but the only one involved in this appeal. Upon conclusion of the evidence in the case the court directed the verdict for the defendant. The plaintiff did not plead around the release in her petition, but attacked its validity in her reply. She alleged that the release was signed under force, duress, intimidation, and undue influence. Therefore, the only question presented by this appeal is whether the evidence was sufficient to go to the jury. The plaintiff contends that it was sufficient and that the court committed reversible error in taking the case from the jury and directing the verdict.

A discussion of the evidence generally, as well as that relating particularly to the procurement of the release, is necessary to a proper understanding of the case. The plaintiff was an employee of the defendant corporation, which had an office in Tulsa and one at Garber. At the time of the injury complained of she was employed as a bookkeeper at the Garber office. She alleged that she was having some trouble with her bookkeeping, and that some one in the Tulsa

office asked her to bring her ledger to Tulsa and receive assistance in straightening out her accounts. She arranged to make the trip on a weekend, and without any direction from the company arranged with George Defiel, a day laborer at the refinery, to take her in his car. He checked out at 12:02 p.m. on Saturday, and took the plaintiff in his own car and at his own expense to Tulsa. His mission was social and had no connection with his employment. On the highway between Garber and Tulsa, Defiel's car collided with another car, and as a result of the collision the plaintiff sustained certain injuries, the principal one complained of being caused by a blow from the heavy bookkeeping ledger on the back of the neck and shoulders as it slid forward from the ledge on the back of the car seat at the impact of the collision. As a result of said injuries, which were sustained on October 2, 1937, the plaintiff was confined in a hospital at Tulsa two months for treatment. She then went to her home in Henryetta, where she remained convalescing some four or five weeks, returning to work at the Tulsa office February 13, 1938. The company advanced her, by way of a loan, $600 for care and medical treatment. She worked about three weeks and her doctor advised her to go back home and rest awhile longer before assuming her duties at the office. She stayed at home six weeks and then returned to her employment in the Tulsa office, where she worked until November 15, 1938, at which time she claims she was discharged from employment.

The release in question was executed on March 5, 1938, upon a cash settlement of $750. In addition thereto the plaintiff was paid her regular salary of $140 per month from the date of the accident on October 2, 1937, to the end of November, 1938, a year and two months, amounting to $1,860, and in all amounting to $2,610.

When the release was submitted to the plaintiff by the vice president of the company she took it out of the office to give it consideration. She counseled with Miss Collins, an employee of the company who was an attorney, as to her rights in the matter, and after this consultation went before a notary public and signed and acknowledged the release and delivered the same.

In the evidence we see no coercion on the part of the company, and certainly there was no fraud. The release was not submitted to her for execution until five months after the accident. She had ample time to give the matter full consideration. Miss Collins discussed the matter with her in the same manner that other attorneys would have done. She pointed out various things that should be taken into consideration, to wit: plaintiff had been kept on the pay roll at her regular salary during the time she was recovering from her injuries and the facts in the case were such as to render the probabilities of establishing liability against the company very uncertain, and that her refusal to sign a release would likely terminate her employment.

The plaintiff, in her brief, quotes the testimony of Miss Collins in support of her claim that the release was obtained by force, duress, intimidation, and undue influence.

In substance the testimony of Miss Collins was that the plaintiff came into her office with the release in her hand and told her that Mr. Whitaker had asked her to sign the release, and wanted to know what to do about it. Miss Collins told her that she would have to decide for herself; that she thought it would be best for her to sign it, but she did not want her to take her advice on it. She explained the advantages and disadvantages of signing the release. She told the plaintiff that if she signed the release, she would get the $750 with which to clear up her bills, and that she would have no lawsuit. And furthermore that she had no contract of employment, and that if she did sign the release, the Omar Refining Company might close the next month, as marketing conditions were unfavorable and she was expecting them to close, and that later they did close. She testified that

she wanted the plaintiff to sign the release because she did not think she had a cause of action. That plaintiff had chosen her own way to come to Tulsa and was coming on her own accord. That she asked plaintiff if the accident was the fault of George Defiel, and the plaintiff said it was not, and that she told plaintiff that she had no cause of action if Defiel was not negligent, even if he was an agent of the company. That plaintiff then decided to sign the release.

The plaintiff testified, in substance, that on the 5th day of March, 1928, Mr. Fred Whitaker called her into his office and told her that they were sending her home for six weeks to further recuperate, and told her that he had some papers he wished her to read over and sign. That she took them out of the office and that he followed her out and asked her if she had signed them, and she informed him that she had not. That she walked into Miss Collins' office and asked her if she would sign the release if she were in her place, and Miss Collins said that she would. The plaintiff asked what alternative she had, and Miss Collins told her that she could either sign the release and keep her job and have her hospital bills paid, or not sign it and sue the company.

There is no evidence that the plaintiff was promised a permanent employment as an inducement to sign the release. She was retained on the pay roll until November 15th of said year, and, according to the evidence, she was not doing her work, but was passing it on to other employees, and complaint was made by such employees that they were having to do her work, and Mr. Whitaker called her into his office and advised her that if she was unable to do her work, she could go home and stay until she felt that she could perform the duties of her employment. She took offense at this and demanded two weeks pay in advance on the claim that she was being discharged without notice. Miss Collins tried to persuade her not to quit her employment, but she would not listen to her persuasions and still demanded the two weeks additional pay. The de-

mand was complied with and she left the office and did not return.

The plaintiff's right to recover, in part, depended upon her ability to avoid the release. She attempted to avoid the same by pleading fraud on the part of the defendant in its procurement. As to the proof of the fraud, this case is governed by the general rule applicable to written contracts, which is found in the second paragraph of the syllabus of Lusk v. White, 58 Okla. 773, 161 P. 541, as follows:

"It is a well-settled rule that fraud is never presumed, and that, where a written contract is attacked on that ground, the contract will be upheld, unless the allegations of fraud are established by clear and convincing evidence, and the fraud must be predicated upon existing facts, and cannot consist of mere promises as to future action."

The record discloses no evidence of actionable fraud, and in view of such circumstances, we hold that the evidence was not sufficient to warrant a submission of the cause to the jury, and the action of the trial court in directing the verdict for the defendants was not error.

The judgment is affirmed.

WELCH, C. J., and OSBORN, GIBSON, HURST, DAVISON, and ARNOLD, JJ., concur. RILEY and BAYLESS, JJ., absent.